RECEIVED

JAN 1 2 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **FLORIDA DAPREMONT** | **CIVIL ACTION NO. 05-1647** |
| **VS.** | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REMANDED** pursuant to sentence six of 42 U.S.C. §405(g).

### *Background*

Born on December 26, 1954, Florida Dapremont ("Dapremont") is a 51-year-old claimant with a seventh-grade education. (Tr. 200). Dapremont has worked in the past as a cook and cashier. (Tr. 16).

On July 1, 2003, Dapremont filed an application for disability insurance benefits, alleging disability as of June 1, 2001 due to high blood pressure, heart condition, hand numbness, and depression. Dapremont's application was denied initially and on reconsideration, and an administrative hearing was held on January 19, 2005. In an opinion dated April 25, 2005, the ALJ found that Dapremont retains the residual functional capacity to perform work at all exertional levels. (Tr. 20). The Appeals Council denied review, (Tr. 5-7), making the ALJ's decision the final decision of the Commissioner from which Dapremont now appeals.

## *Assignment of Errors*

Dapremont raises three errors on appeal: (1) the ALJ erred in giving greater weight to the opinion of a reviewing psychologist rather than the claimant's treating physician; (2) the ALJ erroneously found that Dapremont failed to attend a psychiatric consultative examination scheduled post-hearing, which the ALJ concluded "indicates a lack of cooperation;" and (3) the ALJ erred in concluding that Dapremont can do work at all exertional levels in light of her carpal tunnel syndrome.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.
2. A person who does not have a "severe impairment" will not be found to be disabled.
3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
4. If a person can still perform his past work, he is not disabled.
5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 4 that Dapremont has severe carpal tunnel syndrome and non-severe, mild depression, but nevertheless concluded that Dapremont is not disabled because she retains the residual functional capacity to perform work at all exertional levels with no repetitive firm grasping. (Tr. 20). Thus, the ALJ concluded that Dapremont can return to her past work as a cashier. (Tr. 19-20). The undersigned concludes that the ALJ's decision is supported by substantial evidence.

I. **Medical History**

**Heart Condition and High Blood Pressure**

Dapremont began treatment for hypertension and chest pain with her treating physician, cardiologist Dr. Jonathan Stein, sometime in 2000. On October 18, 2001, Dr. Stein reported that

Williams was doing well and had no chest pain or shortness of breath. An exercise stress radionuclide test conducted on October 15, 2001 was normal. Around that time, Dr. Stein reported that Dapremont had no evidence of obstructive coronary artery disease and well-controlled hypertension and hyperlipidemia. (Tr. 102).

August 7, 2002, Dr. Stein reported that Dapremont had recently been seen in the emergency room for reports of chest pain, but that she had experienced no recurrent episodes of chest pain since that time. Dr. Stein diagnosed Dapremont with well-controlled hypertension and incompletely-controlled hyperlipidemia.[1] It appears that Dapremont was not complying with her medication regime, as Dr. Stein's report notes that he emphasized to her the importance of doing so. (Tr. 100).

On August 16, 2003, Dr. Stein reported that Dapremont "has no disability to perform work-related physical activities, such as sitting, standing, walking, lifting, carrying and handling objects, hearing, speaking and traveling. There is no mental impairment specifically. There is no impairment of understanding and memory, sustained concentration and persistence, and social interaction and adaptation." (Tr. 99).

**Carpal Tunnel Syndrome/Hand Numbness**

On December 16, 2004, Dapremont was examined by Dr. Theodore Knatt, an orthopedic surgeon, for complaints of a right third trigger finger. Dr. Knatt reported that Dapremont had positive Tinel's sign[2] and positive Phalen's test[3] on examination, with some tenderness to

---

[1] Hyperlipidemia is an elevation of lipids (fats) in the bloodstream. These lipids include cholesterol, cholesterol esters (compounds), phospholipids and triglycerides. They're transported in the blood as part of large molecules called lipoproteins.

[2] Tinel's sign is defined by MedicineNet.com as follows:

palpation along the A1 Pulley of the right third finger. Dr. Knatt diagnosed Dapremont with right carpal tunnel syndrome and right third trigger finger. Dr. Knatt advised Dapremont that she would benefit from carpal tunnel release and a right third trigger finger release as soon as possible, and she was instructed to schedule these procedures. (Tr. 92). There is no indication in the record that Dapremont ever underwent either of these procedures.

Dr. Knatt also referred Dapremont to Dr. Joseph Bozzelle, a family physician, for an electrodiagnostic study (date unknown). The results of the tests confirmed that Dapremont had a positive Tinel's sign and a positive Phalen's sign, with right third trigger finger grip 4 out of 5. (Tr. 94).

**Depression**

The record shows that Dapremont had no treatment for depression or any other mental impairment prior to the time that she filed her application for disability in July 2003. Rather, Dapremont began treatment for depression with the St. Mary Mental Health Clinic in August 2003. Progress notes dated August 6, 2003 indicate that Dapremont stated that she does not like her son's girlfriend, who she believes steals from her; that she hears her dead mother-in law's voice and believes in ghosts; that the rest of the family says she is crazy; that she cannot stand being around children; and that she holds grudges against people. Dapremont was put on Prozac for her depression and Trazadone for insomnia. (Tr. 160).

---

An examination test that is used by doctors to detect an irritated nerve. Tinel's sign is performed by lightly banging (percussing) over the nerve to elicit a sensation of tingling or "pins and needles" in the distribution of the nerve. For example, in a person with carpal tunnel syndrome where the median nerve is compressed at the wrist, Tinel's sign is often "positive" and causes tingling in the thumb, index, and middle fingers.

[3] A Phalen's test involves one minute of acute wrist flexion against resistance. A positive test suggests carpal tunnel syndrome.

Progress notes dated September 24, 2003 state that Dapremont does not drive, so she could not pick up her prescription for Prozac. However, she'd been given a free 30-day supply of the medication, and she stated that the medicine helped her. (Tr. 159). Progress notes dated December 17, 2003 state that Dapremont gets aggravated with her family, but that the Prozac does help. Dapremont also stated that she was still having trouble sleeping, so her Trazadone dosage was increased. (Tr. 158). On May 12, 2004, Dapremont was seen at the Clinic and complained that she was doing "so-so." Dapremont still did not like her son's girlfriend, who she believes put a voodoo curse on Dapremont's house. (Tr. 157). Dapremont complained about irritability and stated that she wanted to run over her son's girlfriend with a car. (Id.). On June 9, 2004, Dapremont reported that she was sleeping okay, but she sees "little monkeys flying outside." (Tr. 156). On September 8, 2004, Dapremont stated that she was seeing snakes. (Tr. 155). The attending physician who examined Dapremont on all of the foregoing dates diagnosed her with depression.

At the request of Disability Determinations Services, Dapremont was examined by Dr. Samuel J. Stagg, an internist, on October 20, 2003. Dr. Stagg noted that Dapremont complained of pain and numbness in both hands; pain in her left leg that causes her to fall down frequently; chest pain; and depression. Dr. Stagg reported that Dapremont was alert, cooperative, and oriented; her mental status appeared adequate; she got in and out of her chair with no difficulty and her gait was normal; her blood pressure was normal; she had no clinical cardiac enlargement; she had no apparent muscle weakness or atrophy, normal grip, dexterity, and grasping; normal range of motion; normal straight leg raising; and no muscle spasms. Dr. Stagg diagnosed Dapremont with bilateral hand pain with possible carpal tunnel syndrome; lumbosacral pain of

undetermined etiology; chronic depression; and chest pain of undetermined etiology. (Tr. 133). Dr. Stagg clarified that Dapremont's chest pain did not seem to be cardiac in nature, and he further stated that Dapremont has no end organ damage from hypertension, diabetes, or pulmonary disease. (Tr. 134).

On September 30, 2004, Dr. Terri Schwarz, whose medical speciality is not indicated in the record, prepared a "Medical Opinion Regarding Ability to Do Work-Related Activities (Mental)." (Tr. 153-54). Dr. Schwarz opines therein that Dapremont has serious limitations in the following areas: "remember work-like procedures;" "maintain regular attendance and be punctual within customary, usually strict tolerances;" "respond appropriately to changes in a routine work setting and deal with normal work stress;" "understand and remember detailed instructions," "interact appropriately with the general public;" and "travel in unfamiliar places." (Tr. 153-54).

Furthermore, Dr. Schwarz reported that Dapremont is "unable to meet competitive standards" in the following areas: "sustain an ordinary routine without special supervision;" "make simple work-related decisions;" "complete normal workday and workweek without interruptions from psychologically-based symptoms;" "accept instructions and respond appropriately to criticism from supervisors;" "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;" "carry out detailed instructions;" "set realistic goals or make plans independently of others;" "deal with stress of semiskilled and skilled work;" "and maintain socially appropriate behavior." (Id.).

After review of Dapremont's medical records, two state agency physicians, Dr. Joseph Kahler and Dr. Ralph Robincourt, opined that Dapremont has no severe mental impairment. (Tr.

135, 149).[4] In his remarks, Dr. Kahler noted that Dapremont drives to the post office to get her mail; cooks; visits her daughter; watches television; and takes care of her personal needs. (Tr. 147). Dr. Kahler noted that Dapremont's depression "could cause mild restrictions." (Id.). Dr. Kahler concluded that Dapremont has only mild restrictions in the areas of activities of daily living; maintaining social functioning; and maintaining concentration, persistence, and pace. Dr. Kahler had insufficient evidence to determine whether Dapremont has had episodes of decompensation. (Tr. 145). Dr. Robincourt fully concurred with Dr. Kahler's assessment. (Tr. 149).

## II.  Carpal Tunnel Syndrome

Dapremont contends that the ALJ improperly concluded that her carpal tunnel syndrome is not disabling, or at the very least, failed to properly support his reasons for so finding. The undersigned concludes that this claim is without merit. The record clearly shows that Dr. Knatt recommended that Dapremont undergo both a carpal tunnel release and a right third trigger finger release as soon as possible. For unexplained reasons, Dapremont chose not to have the procedure.

It is well-settled that a medical condition that is correctable or that can reasonably be remedied either by surgery, treatment, or medication is not disabling. Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); 20 C.F.R. §§404.1530(a), (b) and 416.930(a), (b) (1986); Knox v. Finch, 427 F.2d 919, 921 (5th Cir.1970); McCarty v. Richardson, 459 F.2d 3, 4 (5th Cir.1972) (per curiam); Stillwell v. Cohen, 411 F.2d 574, 575-76 (5th Cir.1969).

---

[4] Dr. Kahler completed a Psychiatric Review Technique on November 17, 2003 ( Rec. Doc. 135-48), and on December 4, 2003, Dr. Robincourt reviewed it and agreed with the results. (Tr. 149).

Considering that Dapremont's carpal tunnel syndrome can be remedied by a surgical procedure, and considering that Dapremont has chosen not to have the procedure, she is not entitled to benefits for her carpal tunnel syndrome. Therefore, this claim is without merit.

### III. Opinion of Treating Physician

Dapremont argues that the ALJ improperly weighted the opinions of Drs. Kahler and Robincourt, two non-examining state agency physicians who concluded that Dapremont has no severe mental impairment, over the opinion of Dr. Schwarz, her "treating physician," who opined that Dapremont would be unable to hold competitive employment because of severe mental limitations. Dapremont also argues that the mental health records of St. Mary Mental Health Clinic support her claim that she has disabling depression. The ALJ mentions Dr. Schwarz's report in his decision, but specifically states that he gives greater weight to the opinions of Drs. Kahler and Robincourt. (Tr. 18).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000), citing Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.1995); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight *if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence."* Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995), citing 20 C.F.R. §404.1527(d)(2)). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts only where the treating physician's evidence is conclusory, is

unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. See, e.g., Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994).

Here, the undersigned notes that the Medical Opinion form that Dr. Schwarz completed is the only submission from Dr. Schwarz in the record. Furthermore, there is no indication that Dr. Schwarz is one of Dapremont's treating physicians. Indeed, the only doctor who appears to be a treating physician for Dapremont is Dr. Stein, who treated Dapremont for hypertension and chest pains for three or four years. Thus, as Dr. Schwarz cannot properly be considered to be Dapremont's treating physician, his opinion is not entitled to any more weight than that of any other physician.

Furthermore, even if Dr. Schwarz were considered to be Dapremont's treating physician, the undersigned concludes that the ALJ did not err in discounting his opinion, given that it is unsupported by the other evidence in the record. Dr. Schwarz's opinion that Dapremont's ability to function in a workplace setting is severely limited in so many categories is inconsistent with the opinions of both Dr. Stein, who *is* Dapremont's treating physician, and Dr. Stagg. Dr. Stein reported that Dapremont has "no mental impairment specifically. There is no impairment of understanding and memory, sustained concentration and persistence, and social interaction and adaptation." (Tr. 99). Dr. Stein further reported that Dapremont has no inability to "perform work-related physical activities, such as sitting, standing, walking, lifting, carrying and handling objects, hearing, speaking and traveling." (Id.). Dr. Stein's opinion is consistent with the opinion of Dr. Stagg, who reported that Dapremont was alert, cooperative, and oriented, and that her mental status appeared adequate. (Tr. 133). Although Dr. Stein has not treated Dapremont

for depression, considering that he has seen her on a number of occasions over several years, and considering that his conclusions are consistent with those of the state medical examiners, the undersigned concludes that the ALJ did not err in giving more weight to the opinions of Drs. Kahler and Robincourt. Therefore, this claim is without merit.

## IV. **Failure to Attend Psychiatric Consultative Examination**

Finally, Dapremont contends that the ALJ improperly concluded that she failed to cooperate in the investigation of her claim by failing to show up at the psychiatric consultative examination that the ALJ scheduled for her following her administrative hearing. The record shows that the ALJ referred Dapremont to Dr. Henry Lagarde, a psychologist, after a line of questioning at her administrative hearing in which Dapremont testified that she tried to kill her husband by poisoning him; wants to shoot her own son; wants to run over her son's girlfriend with a car; and attacked her mother by throwing a glass of water in her face. (Tr 218-21). Although the ALJ stated at the hearing that he had serious doubts about Dapremont's credibility, noting that she only sought treatment for mental impairments after she filed her application for benefits, he nevertheless stated that, if her testimony was indeed true, Dapremont is a danger to herself and others. Therefore, the ALJ left the record open for the purpose of referring Dapremont for a psychiatric examination with Dr. Lagarde to determine whether her claims regarding her mental impairments are actually rooted in a mental impairment or whether they are fabricated for the purpose of obtaining benefits.

Dapremont contends that she did not attend the appointment with Dr. Lagarde because SSA did not notify her of the date and time of the appointment. Review of the record confirms Dapremont's contention. The record shows that SSA sent Dapremont the notice of her

appointment with Dr. Lagarde to her *attorney's office* rather than to her home. The ALJ also sent a copy of his unfavorable decision to Dapremont's attorney's office. Believing that Dapremont had been properly noticed with the date and time of the appointment, Dapremont's attorney did not follow up with Dapremont to ensure that she would attend. Thus, the ALJ's conclusion that Dapremont failed to attend the appointment because of a lack of cooperation is erroneous. Rather, Dapremont did not attend the appointment because she did not have notice of it.

The undersigned agrees with the ALJ that Dapremont's credibility is extremely suspect, but that Dapremont should be evaluated by a mental health consultant nonetheless. Dapremont's testimony at her administrative hearing is sufficiently troubling to warrant a mental health evaluation by a mental health professional who is trained to determine whether a patient is either creating or exaggerating mental health impairments, or whether there is an organic mental impairment that requires treatment. Furthermore, although both Drs. Stein and Stagg have opined that Dapremont does not have a severe mental health impairment, the specialties of these doctors are not in the areas of mental health. Because Dapremont's failure to attend her appointment with Dr. Lagarde was not due to her own fault, the undersigned concludes that the mental health examination should be conducted, and a report received from Dr. Lagarde, before a final determination is made on her claim.

## V.     **Remand Under Sentence Six of 42 U.S.C. §405(g)**

Remand of the instant case is done pursuant to sentence six of 42 U.S.C. §405(g), which provides as follows:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, *and it may at any time order additional*

> *evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. §405(g) (emphasis added).

Sentence six remands are ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency. Shalala, 509 U.S. at 298, 113 S.Ct. at 2629, citing Melkonyan, 501 U.S. 89, 99-100 and n.2, 111 S.Ct. 2157, 2163-64 and n.2. Sentence six remands contemplate that the Secretary will return to the district court for entry of final judgment following post-remand proceedings. Furthermore, in sentence six cases, the period for filing an application for attorney fees "does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs." Shalala, 509 U.S. at 298, 113 S.Ct. at 2629, citing Melkonyan, 501 U.S. 89, 111 S.Ct. 2157.

In the instant case, the undersigned concludes that Dr. Lagarde's mental health evaluation of Dapremont will constitute new, material evidence that was not presented to the Commissioner through no fault of Dapremont's. Accordingly, remand of this matter is done pursuant to sentence six of 42 U.S.C. §405(g).

## *Conclusion*

Considering the foregoing, it is recommended that the decision of the ALJ be **REMANDED** for further proceedings. On remand, Dapremont shall undergo a consultative mental health evaluation with Dr. Henry Lagarde. Dr. Lagarde shall furnish a report to the Commissioner, after which the ALJ shall re-evaluate whether Dr. Lagarde's report changes his conclusion that Dapremont is not disabled. Dapremont is entitled to present additional evidence on remand and is also entitled to another administrative hearing.

**IT IS FURTHER ORDERED** that this remand is made pursuant to sentence six of 42 U.S.C.§405(g), and, accordingly, this judgment is not a final judgment for purposes of the Equal Access to Justice Act (EAJA). Accordingly, this remand contemplates that the Secretary will return to court for entry of final judgment following post-remand proceedings.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See **Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on January 12, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT:
DATE: 1/12/07
BY: CW
TO: mem
     TLm